Case No. 15-1217 et al., National Labor Relations Board Petitioner v. Tito Contractors, Inc. Mr. Greenbaum for Tito Contractors, Inc. Mr. Ellement for NLRB. Mr. Greenbaum for Tito Contractors, Inc. Mr. Greenbaum for Tito Contractors, Inc. All right, Mr. Greenbaum, we don't often get NLRB cases from right here in the district, so this is an unusual one. Thank you, Your Honor. At least I haven't been on NLRB. I'll try to spice it up and write the last argument. You're exactly correct, Your Honor. Tito Contractors is a Washington, D.C.-based general contracting firm that has contracts with local state and local governments in Maryland, Virginia, and the district. It's a local company. It employs approximately 100 employees. Part of its workforce provides general labor services, carpentry, skilled carpentry, masonry, and painting to various local governments. Some employees who do those services are permanently stationed at the local government agency where they provide those services. Here's, for example, the Arlington Jail. They provide painting and carpentry and other services to that facility. A substantial group of employees also work at Maryland Environmental Services. Let me ask you about that. I don't see anywhere here where you have proposed a—I know you want a smaller unit, but what the unit would be. Would you separate out the recycling from the laborers and the one warehouseman and the two mechanics? In all candor, Your Honor, at the hearing we said our position was the unit as proposed by the union was inappropriate. We did not propose an additional—any other alternative units.  We do want one that's smaller, but it's very difficult in this case, as I will explain. With respect to Maryland Environmental Services— But it's very difficult to identify what that smaller unit would be? There would be many small units because, for example, at Maryland Environmental Services, which I'll call MES, there are three contracts. One is the Deerwood facility, which is— I think it's he starts out with a description of the employer's business operations. He recites for several pages the employer's proper of proof. As far as you're concerned, is that an accurate statement? No, I don't believe so, Your Honor. It's not accurate. And what is inaccurate? Well, he doesn't go through the specific factors which need to be addressed in a community of interest analysis. So his recitation of the facts in our offer of proof should have been taken as true, and it was a pretty detailed offer of proof. They were not. And what the five factors are— Can I just be clear, though? He does refer specifically to these separate contracts, including the contracts for Dickinson and Deerwood facilities, Cockeysville, et cetera. So it's correct as far as it goes, but it doesn't go far enough? Is that your point? Exactly, Your Honor. And in their analysis, which there really is no analysis. So the recitation of the facts, I think, is taken in part from our offer of proof. And it was also taken from part of a transcript of a hearing later that day on the supervisor's desk. Interestingly, those two issues should not be commingled because the issue with the supervisors was not any of the MES employees. None of those were addressed in that at all. And I would emphasize— Let me ask you, though, about this regional director. Because to me, the most significant thing he said is there is no evidence of any interchange between the recycling employees on these— and any other classification of employee. I mean, that is the whole community of interest factor, that he said there is no evidence of community of interest and how the board— I'll ask the board lawyer, but how the board lawyer— or how the board got to its footnote disposition of this case is beyond me in view of that and without having discussed that. I agree, Your Honor. And what's telling is if you look at the dissent in the footnote, the dissent says, I would remand for the board to consider the evidence in light of the factors. Which suggests to me there was no review of the facts. Because if you go through the five facts, which this court addresses in Sunderbrand's and Blumann Group, none of those elements are even discussed in either the regional director decision or the board one-page denial of the request for review, even one paragraph. You know, the interchange is just one factor, but there's no evidence of interchange. Well, there was the one—I think it's the mechanic, right, who sometimes goes out to support another unit. But he goes out to support the laborers. It has nothing to do with MES. And that was one—and that was from the—that was from the supervisory hearing, which if the board is going to take an offer of proof, which, you know, we objected procedurally, then they have to take it as true. Lock, stock, and barrel. That's the standard. This was actually the warehouse employee, is that right? It's just one employee who they say goes out and— But you say he doesn't go to the MES. Not at all, Your Honor. Interestingly, because the MES—MES provides its own equipment. Tito Contractors provides no equipment for MES employees. It's just labor. In the board's opinion, exaggerates it by saying employees. There's evidence that employees borrow. Right. You know, Your Honor, it's no different than Sunder Brands, which this court remanded back to the board, because one, the board exaggerated the record. And two, it was—you know, they exaggerated—just like in that case, you know, they're extrapolating one employee going out to a construction site. I don't even know what it is in the record. There's really no elaboration. Well, actually, it's just the one employee. There is some evidence that the warehouse employee sometimes assists—and that's not even true, because— No, there's only one— One time. There's only one warehouse employee? Well, I mean, I don't see there's evidence that he sometimes assists. I think it happened one time, according to Bautista. Right. And that's exactly the point, Your Honor, and I don't think I need to belabor it. If you read the regional director decision and the board footnote, really, there's no analysis of the five factors, and that's what the Act requires. Section 9 of the Act requires for the board to make a determination of the appropriate unit in each case. What is your burden, if any, if you're challenging the wall-to-wall unit, which you did even in your offer of proof, to say what unit you prefer? Yeah. The burden is set forth in the Greenhorn and O'Mara case. It's the employer's burden to establish that the petition for an employer-wide unit is inappropriate. So the burden is to go through the five factors. As this Court said in Sunderbrand's, the presumption just gives the petitioner or the union the initial advantage. So are you saying you have no responsibility to say what the unit should be? Not at all, Your Honor. That's not in the Act. In fact, the case the board cites, the Mariah case, which is how they came up with this whole procedure, that case says definitely that, and in that case the employer took no position on the unit, whether it was inappropriate or appropriate. We took a position. But in that case, they said even if the employer does not take a position, the board still has authority to come up with an appropriate unit. In this case, the board could have decided a different unit at issue. Well, the board always has the responsibility to come up with the appropriate unit. I don't understand what you're saying. That's right. We have no burden to come up with an appropriate unit. But if you're challenging, my question to you is if you're challenging a presumptive, whether this is presumptively appropriate or not, I don't, I mean, let's assume it is, that you're saying you have no burden once you challenge it to say what an appropriate unit is, in your view. In our view, no. I haven't seen any case which says that. Some cases say, what the cases say, and I think it's the Laurel Associates case they cite. It's an NLRB case. They say what happens is first the board or the regional director has to decide whether the petition for a unit is inappropriate. If it's inappropriate, okay, if it's appropriate, it ends. That's it. It's an appropriate unit, and they will direct an election. If it's inappropriate, they will either scrutinize the employer's proposals or come up with a unit on their own that's appropriate. But in this case, they found that the unit was appropriate. Based on a limited record, they didn't review our offer of proof or at least take it as true. In other words, what I'd like to understand is where you have the board saying a wall-to-wall unit is presumptively appropriate and the employer says not so. Hypothetically, employer wins. It goes back to the board. The board says, okay, maybe two units. Then the employer comes back here and says, no, two units is not appropriate either. We send it back to the board. When does this come to an end? Does the board have to have some notion of the employer's thoughts in this matter? I haven't seen any case that says that. So it could just have a perpetual, you'll be back here every two years challenging the unit? Yeah, I don't think so, Your Honor. I think what could have happened is if the board came back and said it's inappropriate and they didn't want to, on their own, decide an alternative, the union could have petitioned for another unit right away. There would be no waiting period, no sort of one-year certification bar. So the burden's on the union, so the union says, well, let's have two. They're the petitioning party. And you say no, we come back. In other words, I thought there was some notion in the statute that we're trying to move this process forward and not have a perpetual litigation merry-go-round. That's why it may not be a burden in a sense of a legal obligation, but in fact the cases, either the employer has not raised any objection or the employer has made another proposal that the board can look at and maybe the parties can agree. Yeah, and actually there is something in the end of the transcript where the hearing examiner asked the union whether they would abide by, you know, they would go to election with any unit the regional director found appropriate. And there's some discussion, and he said, you know, they want one election, which means everything. They could have amended their petition to have smaller units. But you see what I'm getting at. I see what you're getting at, Your Honor. You'll never get an election. You'll never get bargaining. Decades pass while we're trying to figure out what's going on. It seems to me there has to be some burden on both parties. The union says what it wants. The employer says what it wants. The board makes a decision. But not to have sort of this three-ring position. That's what I'm concerned about. No, I understand the concern, Your Honor. In the language you quoted from Laurel Associates, if it's appropriate, the inquiry ends. And you quoted it exactly. If, however, it's inappropriate, the board will scrutinize the employer's proposals, which implies that you do have to have a proposal. Well, there's also Mariah, Your Honor, which I think comes. It implies that if there is one, that's the thing. You don't have to, but his position is he doesn't ever have to. Well, Your Honor, the Mariah case, which is the board case they rely on, the fact that the employer declined to take a position on the unit does not prevent the regional director from making a unit determination. I understand that, but I hear you saying you don't ever have to. If we send this back to the board, you don't ever have to say anything about what you think is an appropriate union. I understand you're saying it's the union that wants the bargaining unit. They're the petitioner. If the unit's inappropriate, it's inappropriate. Judge Rogers is making a good point. This just can't go on and on and on. Are there any cases in which you've seen it go on and on? Any case where it's come up even a second time? I think what would happen is if the board, if the regional director came back, and the regional director comes back with these decisions pretty quickly, came back and said that's an inappropriate unit, I think what would happen is the union would make a new petition if they had a showing of interest. No, but we'd be right back here. That's all I'm trying to get at. I understand your point, but there's nothing to prevent us two years from now seeing you again, and two years after that seeing you again because the employer has never showed its hand. It obviously, not obviously, I take that back, but it wants to delay the process. So it just says union you propose, board will come up to the D.C. Court of Appeals, get remanded, start all over again. That's not the notion, it seems to me, that Congress had in mind in passing this statute, is it? I don't think so, and frankly, Your Honor, this is probably one of the last cases you're going to get under the old NLRB rules. There are new election rules which come into play, and a lot of these issues are deferred, not the whether it's an appropriate unit. I think that's still subject to a pre-election hearing. But again, frankly, if the regional director took evidence, maybe we wouldn't be here either. If they actually let us have a hearing and took evidence, maybe from that hearing there would have been some proposals. We were just sort of went into this hearing and said, okay, it's a presumptively appropriate unit, which we objected to. I mean, it's not subject to this appeal. We did object to the presumption because, you know, we have all these disparate facilities which the employees do not report to Tito's headquarters building in Washington, D.C. They never go there. And in fact, Your Honor, I found it interesting that when there was an election in this proceeding, it had to be a mail ballot election because NES wouldn't allow an election to be conducted on its premises. I know, but the point is you described your client as a general contracting firm that operates in the greater Washington, D.C. metropolitan area. Well, that's a lot of firms, all right? And the way you want us to look at this is it's really not a single firm. It's many firms. It does recycling, and then it does all these other things, all right? But I can hear the next argument that, no, it's really three firms because the employees have different skills, do different tasks at different locations. I mean, we're 100 different bargaining units. And the whole system comes to a halt. Well, Your Honor, the only close analogy I would have is in the health care industry, Congress stepped in, and that's really the Laurel Associates case where there was a congressional intent to limit the proliferation of bargaining units in health care. There's not that in for a company like Tito Contract. No, I'm not getting to that. I'm getting to when does this process end. I mean, you may win the election. Who knows? But we'll never know because we'll never get to an election because we can never get this bargaining unit decided. Well, they won the election. So there were 87 employees in the voting, 87 eligible. You're trying to get all that set aside so we'd start again. Well, interesting, Your Honor, and I alerted the board to this, and I found out after we submitted our briefs, that Tito was not the lowest bidder on the Deerwood MES contract, and those employees are no longer employed by Tito. They're at the MES facility with the lowest bidder. So there's a significant change in the scope of the bargaining unit anyway, and I just learned that right before the oral argument. When the votes were tallied, was there a record as to how many at each facility or each business voted each way? No, but I could. I don't know. There's no record of that, but there were 87 eligible voters. I believe 54 were MES employees, and the rest were the various. But you don't have a breakdown? No breakdown. Okay. All right. The general counsel of the board has a remedy. They will impose a sanction on you if you come along and contest the next one in a deemed frivolous or even if you lose, right? You'll be subject to paying the union's costs, attorneys' fees, or maybe the board's attorneys' fees, I should say. And not bad pay, but what is it? I'm just looking at the general counsel's memo on this. Free shifting and reimbursement of bargaining costs. Well, you probably won't have bargaining costs. Right. Right. All right. Thank you, Your Honor. Mr. Elman? May it please the Court, good morning, Your Honors. Michael Elman on behalf of the board seeking full enforcement of its order. I, of course, do want to turn to both the warehouse employee issue and then the issue of proposing other bargaining units because I can see the Court is interested in that. Before you do that, could you turn to the footnote? Sure. All right. The board's footnote. Yes. Yes. I want to ask you, first of all, what does it mean that no party seeks to represent any of the employees in a smaller unit? That can only mean a union. Are you talking about a second union? Are you saying that the union has to both say, we want wall-to-wall, but we also want smaller if we don't get that? I don't understand. No party seeks to represent any of the employees in a smaller unit. Sure, Your Honor. In some cases where there's a representation hearing, there are two unions that come forward, and one union says, I want to organize the employees this way, and another union says they want to organize the employees in another. So I think probably what the board meant there is just that's not involved in this case. There's no other. And it goes before that in the same sentence. It says there's no evidence of collective bargaining in smaller units. Now, I know that that could be a factor. It can't be the controlling factor. But, you know, the board has one footnote in which it has what I think can be described as extraneous reasons and doesn't even mention that there is no evidence that there is no interchange among the three recycling facilities and no interchange between the recycling facilities and the laborers. Yes, Your Honor. Absolutely, and I do understand the court's concern. Let me try to break it down and give you a few answers on the different questions. One, in terms of the— Excuse me one second. There's actually an erroneous claim to the contract where it says the warehouse employee sometimes assists with other employer projects. I think that is accurate from the record, Your Honor. And if I could point to JA149 from Tito's own brief to the board, it said, quote, the warehouse employee coordinates shipments and deliveries with other employees. And he's running a warehouse. That's not surprising. That's not going out and working with the other employees, the other sites. Right, Your Honor, but he is having interactions with these employees according to Tito's own brief. I mean, it's not substantial interaction, and we recognize that, and I'm certainly not trying to persuade the court that there's a lot of interaction between the warehouse employees and the other employees, and certainly no interaction with the recycling employees. We can see that. Well, it's just like saying that somebody at the general office who answers the phone forwards the calls to employees at various sites. No, I think the testimony was a little bit more than that from Mr. Battista, that they had worked together, that he knew this employee from his work at the warehouse. We don't have a lot of information on their interaction, but I also don't think that the board was substantively – I don't think that was a major factor in the board's decision. Really, the major factor – What do you think it is? I think the major factor is the presumption of appropriateness of the employer-wide unit, which assumes an inherent community of interest between the employees. I think that's the biggest problem with Tito's argument here today. Well, but all of their improper is to the effect that that doesn't apply here, right? That their wages in terms of employment are determined by different contracts, by public bodies on one side of the business, by the company itself on the other side. There's a lot of things they put in to refute the assumption, the presumption of a wall-to-wall unit. Well, Your Honor, I don't think they met their burden in refuting that presumption. Let me give you – I'm not sure whether they did, but they're not given an answer. It's not clear what it is that they failed to do or what the board failed to credit or to attach significance to. Well, I was just – I think it was in Sundor with this very panel in which we sent the unit determination back for just that deficiency. Well, of course, I would note – I do want to get to the community of interest factors here, but I would note in Sundor, of course, you had there the board approving a parsed unit. It wasn't a presumptively appropriate employer-wide unit. In fact, the employer in that case wanted an employer-wide unit because it would have enhanced collective bargaining as employer-wide units often do. But what the board did in that case was it approved a smaller unit of select employees, and this court said that the board did not justify that parsing of the unit. But I would submit it's very different when you have a presumptively appropriate employer-wide unit. Well, in Sundor, there was a presumptively appropriate unit, wasn't there? No, Your Honor. The issue of the presumptively appropriate unit came up because the employer said we want an employer-wide unit, and therefore we want the court to basically apply a reverse presumption. That is, because an employer-wide unit is presumptively appropriate, we, the employer, want to take advantage of that presumption even though it's not the unit that the union proposed. And what this court said was no, it's for the union to propose the unit consistent with the Supreme Court's decision in metropolitan life, and it's not a 95 violation to use that presumption in assuming that there's an inherent community of interest between employees and a statute. And we said, okay, well, yes, it gives the union a little leg up at the start, but it's not making the extent of organization determined. Right, absolutely. So we say, well, look, that is on the table as it were, even though it's not supposed to be determined as it were. But then we go on and say, under the heading of substantial evidence, that the board simply failed to invoke six factors, the three of which I think it was the court could find no rationale or real response to the employer's objections. Sure. But I do think here the board, although, and I agree with the court's concern that it's brief, does go through commonality that exists between these employees. What does it do with the fact that there are some elements of non-commonality, such as who sets the pay grade, the pay and conditions? Sure. Is that addressed in here? It is not. And it's framed away as being, well, that's not really sufficient for some reason to be determined? The board does not go through the factors that are not present. I would agree with the court on that. Okay. Why isn't that enough? The employers come in and said something pretty important. The wages, hours, and working conditions are not set centrally by us because they're subject to county and city contract rules. And the board said, no. Well, Your Honor, it's not that it doesn't say nothing. In response to that? Did it say something in response to that? It didn't say anything in response to the lack of certain commonality with the employees, but it did address all the commonality that does exist with the employees. And I think where you have a presumptively appropriate unit, and it's the burden of the employer. But substantial evidence is on the whole record. It's got to take account of the contrary submissions. Sure, Your Honor. And it didn't. I mean, you just seem to say it didn't, but. Well, it didn't state those in its own opinion. I mean, the regional director, of course, says that he took account of the entire offer of proof. The R.D. didn't give any reasons either. No. I mean, it's just a conclusion. Yeah. I mean, he says, I find based on the record evidence, including the employer's offer of proof, that the employer has failed to overcome the presumption of appropriate. Right, but that doesn't tell us anything about the reasoning. What was the problem with the employer's offer that made it insufficient? Well, I think that's what the board states in its footnote. That is, all these employees work in the same geographic area. They perform similar skills and duties. They do both skilled and unskilled physical labor. Well, that's, I mean, that's so uninformative that they do skilled and unskilled physical labor. It's like saying they're all employees. Well, I would say two things to that, Your Honor. Really, in the employer-wide unit presumption, that is what we are looking to. All these employees have the exact same bargaining relationship with their employer. Well, how can you say that when the employer cannot determine some of the conditions? Well, it can determine the conditions. Tito is the one negotiating contracts with MES, with Arlington County. The buck stops with Tito. There's no dispute here that anything Tito is doing, it is doing at the pest of customers. The customers don't have their own authority to hire or fire employees in and out of Tito. They can request it. There's provisions in the contract setting certain numbers of hours, but that is all controlled by Tito negotiating those contracts with customers. I don't take Tito to be saying that, well, just because we have customers out there, we're not the one that is controlling these employees. I mean, they do make this joint employer argument, which I'd like to get to in a moment. Take the example you just gave. Some of the sites will assert the ability to say, don't send us employee X or do send us employee Y. Now, I suppose the contract between Tito and that public body allows for that. The offer of proof stated that the MES can request Tito to not send those employees. There was never anything stated in the offer of proof, and I checked Tito's brief, they don't say it here, that MES can just fire somebody. No, no, no, I understand that. They can say that like so-and-so not sent or someone else not. And other employers with whom the company contracts don't have that. That's not my understanding, Your Honor. I would think any of the customers that Tito has could request the Tito. Well, when you get away from the MES side, there's no suggestion in the proper that it's true at all. Well, I don't know. I mean, Tito stated that the four employees that report to Arlington County go there on a daily basis. They receive instructions from Arlington County, and as Tito stated in the offer of proof, the contract also provides that the county has the right to request removal of those employees. So I think it's true that certainly on the laborer side of the business, Tito does have customers that can request, as I would think any customer of a general contractor. On which side of the business? On the laborer side of the business. So this is from the offer of proof where they're discussing the Arlington County. So it's the MES. Well, not MES. Pardon me. It's the public contracting side. Yes. Not the construction side. Well, I'm not sure there's a difference, Your Honor. That is what we've termed, and I think what Tito has termed, the laborer side of the business, which I think is around 30 people who do general contracting, and also some of those employees work under contracts with either Arlington County, Baltimore City, or Fairfax County. In those circumstances, just like on the recycling side of the business, you have customers that can request that, I don't like this employee. I don't like the work he's doing. I would like him removed from our job site. Yes, but the recycling has so much more authority. It can cut the hours. Days, how many days a week? Yeah, which maybe a customer can say, I don't want you painting for the next six hours, but I wanted to ask you about a position in your brief that Tito's labor management relations are centralized. Now, the board never mentioned that. They didn't, Your Honor. So we can't consider it. I would disagree with you there, Your Honor. I mean, the board applies the employer-wide presumption, and I think what we are trying to do in our brief is explain why the employer-wide presumption. You've got to live with this footnote. You've got to live with this footnote. I agree, Your Honor. And not only the footnote, but you've got to explain why you ignored the finding by the regional director that there was no evidence of interchange among the recycling themselves, inter se, whatever, and between the recycling and the laborers. Yes, Your Honor, there was no interchange. Interchange is not required. There's a lot of units, and in many of the cases, recycling. That's one of the cardinal attributes of a community of interest. I would respectfully disagree, Your Honor, that employees do other. I mean, if you look at AERCO, which is a case recycling. I don't know. Maybe we're arguing about what interchange means. To me, that didn't mean that they did each other's jobs, but that they didn't even see each other, that they had no contact. In Sandor, you said just filling in when somebody is out sick or something or on vacation. That's not interchange. Well, yes, Your Honor, but, of course, again, there the court, I think, was trying to get at why this unit was split up and why some people weren't included in the unit. But, I mean, if you look at a case like Acme Markets. What did the court say about the employee or employees who are 60 miles away? I think still with the presumption of appropriateness, it's still proper. I mean, if you look at a case like Acme Markets, you had employees in drugstores over four different states. They never saw each other. They weren't even close to each other. They were in Pennsylvania, Delaware, Maryland, and New Jersey. But because it's an employer-wide unit, the type of unit that the Act specifically lists as an appropriate unit, the presumption applies, and I would agree with the court. It's a strong presumption. It's very difficult for employers to rebut that presumption. I'm sure you're right about that. It's just that the board has to explain itself adequately to defend the presumption or to apply the presumption in the face of some attempt by the employer to defeat it. Sure, Your Honor. And I just, I would reiterate to the court that I think the board's order is sufficient on that regard because it applies the presumption, it notes the commonality between the employees, and then concludes that this is an appropriate unit. I think Judge Rogers has a question for you, otherwise. No, I have a question. You have one. You're okay? Yeah. All right. You have one. Okay. Do you have another one? No. All right. Well, you're out of time. Oh, yes, Your Honor. Thank you. I thank the court. Does Mr. Greenville have any time? Mr. Greenville does not have any time. He what? He does not have any time. All right. Why don't you take one minute? Not even a minute. I just want to- I have one question, all right, so I'm clear. When I hire contractors from Tito Construction to build a barn or whatever, I have a contract with them, and I tell them I don't want them to work on Wednesdays, and I don't want them to work before 7 a.m. in the morning. So, and then maybe I don't feel well one day, so I call and I say, please hold them off. Now, the contracts that were proffered here are with either governmental or quasi-governmental entities, so there's a little more formality, perhaps, about it. But isn't the nature of being a general contracting firm such that you are continuously dealing with customer satisfaction, whether that means through a formal contract process or just because I'm the lady who doesn't want anybody there before 7 a.m. in the morning? So, when the board comes back and says, as it does in this footnote, what I need to be clear on is, are you- is your main point that the board simply didn't explain beyond that footnote, or is your alternative argument that the board was required to allow your client to introduce evidence to show the inappropriateness of this unit, that it could have used its proffer procedure, but if it was going to use that, then it had to take everything used, the proffer said basically as true, and deal with it. And that's not what happened here? Yeah, so we were taking both those positions. They're somewhat interrelated, I realize. I think so. And one thing they cite, the board cites in its brief, there's evidence of centralized labor relations. And I looked at the site in the transcript, and it doesn't say that. There's no evidence of centralized labor relations. And just for the-if we were allowed to introduce evidence, you would see that the MES employees are controlled by MES. MES has supervisors on the floor watching the performance of the employees. Yeah, but I don't see why that isn't just standard operating procedure. When I hire somebody, I'm going to watch what they're doing, or I'm going to have somebody watch on my behalf. You know, that's what I'm trying to be clear on. We want the board to explain, and it could explain, but your point is it really can't explain adequately unless it takes your entire proffer as true? That's correct, Your Honor, and that's also not the case with other employees. That's not the case with all the employees. No, I know. Sometimes you do it directly, but other times you get a contract from me. That's my only- And that would be the other employees? Yeah. Because there's four assigned to the Arlington Jail. That's more akin to Arlington controlling terms and conditions of employment. If I recall correctly, the pages cited for centralized management control said only that if an employee has a complaint, they have to talk to Mr. Tito. I think that was from the labor side. I think at the MES side, those employees never go to Tito. They never go to that building. If they have a complaint, they actually, if we were allowed to introduce evidence, they go to MES, and that's what the evidence would show. That's what's happened. That's what happened. All right, thank you. Thank you, Your Honor.
judges: Henderson, Rogers, Ginsburg